Zheng "Andy" Liu (CBN 279327*)
***Aptum Law***
1660 S Amphlett Blvd Suite 315
San Mateo, CA 94402
Tel.: (650) 475-6289
Email: Andy.Liu@AptumLaw.us
*Attorney for Petitioner Guoming Xue*
*Application for *pro hac vice* forthcoming

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

GUOMING XUE,

*Petitioner*,

v.

ERIC ROKOSKY, in his official capacity as Warden of Eloy Detention Center;

*Respondent*.

Case No.: ____________________

Agency No. A245-831-174

**SECOND PETITION FOR WRIT OF HABEAS CORPUS**

**RELATED CASE: 2:26-CV-07159-CKJ**

## INTRODUCTION

### A. The Inadequate Bond Hearing

1. In a prior Habeas Petition (2:26-cv-07159-CKJ), this Court on October 13, 2026 ordered that Respondent provide Petitioner a bond hearing within seven days or release him.

2. While Respondent did provide a bond hearing on October 16, 2026, it was factually inadequate, if not a sham.

3. Respondent notified a wrong attorney (Mr. Jianchen Zhu) about the bond hearing on October 14, 2026 and did not allow Petitioner meaningful time to submit any supporting evidence.

4. The immigration judge then summarily denied Petitioner bond, deeming him a flight risk.

5. Such an inadequate bond hearing does not comport with due process.

### B. Case background.

6. On September 4, 2026, Petitioner Guoming Xue and his friend Mr. Peilong Sun[1] were driving to Mr. Sun's California home after one-day business trip to Arizona. Petitioner was the passenger, while Ms. Sun was the driver. Neither Petitioner nor Mr. Sun was subject to any criminal investigation. Neither Petitioner nor Mr. Sun violated any traffic laws. Yet, an unmarked ICE vehicle pulled them over on the Interstate 10 in

[1] Mr. Peilong Sun has a co-pending habeas petition of his own, which will be related to this case.

California. The ICE agents did not present a warrant, nor explained the reason for the stop. The agents did not ask for a driver's license, a vehicle registration, or a proof of insurance. Instead, the agents asked only about the immigration status of Petitioner and Mr. Sun (the driver). Petitioner and Mr. Sun were then detained in the back of an ICE vehicle, while the agents searched Petitioner's car and seized both men's telephones. The agents did not ask about Petitioner's family ties, his prior compliance with immigration authorities, or whether he was likely to flee. During the road-side detention, Petitioner never attempted to flee and complied with all agent's instructions.

7. After searching the vehicle, the agents transported Petitioner and Mr. Sun to a nearby office, questioned them further about immigration history, and then transferred both Petitioner and Mr. Sun from California to Eloy Detention Center in Arizona.

8. Since September 4 2026, Petitioner and Mr. Sun have been purportedly held in "mandatory" detention under a novel but incorrect interpretation of the Immigration and Nationality Act's detention authorities.

9. Petitioner petitions for a writ of habeas corpus to seek enforcement of his rights as a member of the Bond Denial Class certified in *Rodriguez Vazquez v. Bostock,* 183 F.4th 1160. (9th Cir. 2026) and *Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM (C.D. Cal. July 28, 2025) 2025 LX 341363. Petitioner is in executive custody and faces unlawful detention because, in a brazen disregard for the rule of law, both the Department of

Homeland Security ("DHS") and the Executive Office for Immigration Review ("EOIR") have refused to comply with the declaratory judgments in—a decision now affirmed by the Ninth Circuit—and in *Maldonado Bautista*.

10. On May 2, 2025, the U.S. District Court for the Western District of Washington certified the Bond Denial Class in *Rodriguez Vazquez*. *See* 349 F.R.D. 333, 365 (W.D. Wash. May 2, 2025) (certifying Plaintiffs-Petitioners' proposed Bond Denial Class, limited to detainees held at the Northwest ICE Processing Center). On September 30, 2025, the district court granted partial summary judgment to the *Rodriguez Vazquez* plaintiffs, and acknowledged an entitlement to consideration of release on bond for individuals who (1) have entered or will enter the United States without inspection; (2) are not apprehended by immigration officials upon entry; and (3) are not or will not be subject to the detention authority articulated at 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the noncitizen is scheduled for or requests a bond hearing. *Rodriguez Vazquez v. Bostock*, 2025 WL 2782499, at *86–87 (W.D. Wash. Sept. 30, 2025).

11. Similarly, on November 20, 2025, the U.S. District Court for the Central District of California granted partial summary judgment in *Maldonado Bautista*. Shortly thereafter, on November 25, 2025, the district court certified a nationwide class and extended declaratory judgment to the certified class. *Maldonado Bautista v. Santacruz*, 2025 WL 3289861, at *11 (C.D. Cal Nov. 20, 2025) order granting partial summary judgment to named Plaintiffs-Petitioners); *Maldonado Bautista v. Santacruz*, 2025 WL 3288403, at *9(

C.D. Cal Nov. 25, 2025) (order certifying Plaintiffs-Petitioners' proposed nationwide Bond Eligible Class, incorporating and extending declaratory judgment from Order Granting Petitioners' Motion for Partial Summary Judgment). On February 18, 2026, the district court issued another order explicitly vacating *Yajure Hurtado* and admonishing the respondents, stating that the government had continued to "engage in unlawful practices under the guise of 'immigration enforcement' and fidelity to agency regulations" although "[t]hose practices were found unlawful by way of statutory interpretation by this Court." *Maldonado Bautista v. Santacruz*, Case No. 5:25-cv-01873-SSS-BFM, Dkt. 116 at 14 (C.D. Cal. Feb. 18, 2026). The December 18, 2025 and February 18, 2026 orders in *Maldonado Bautista* have since been temporarily stayed pending the Ninth Circuit's consideration of an emergency motion for a stay pending appeal. *Maldonado Bautista v. Department of Homeland Security*, Case. No. 26-1044, Dtk. 5.1 (9th Cir. 2026).

12. On July 30, 2026, the Ninth Circuit affirmed that judgment in a published opinion, holding that § 1225(b)(2)(A) does not apply to noncitizens, like Petitioner, who are present in the United States without admission and were arrested in the interior of the country. *Vazquez v. Bostock* (9th Cir. 2026) 183 F.4th 1160 ("we conclude that aliens present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)"). Rather, their detention is controlled by § 1226(a), which allows for discretionary release on bond. *Id.*

13. The Ninth Circuit's decision in *Rodriguez Vazquez* is a binding precedent in this Circuit. "[O]nce a federal circuit court issues a decision, the district courts within that circuit are bound to follow it and have no authority to await a ruling by the Supreme Court before applying the circuit court's decision as binding authority." *Yong v. I.N.S.*, 208 F.3d 1116, 1119 n.2 (9th Cir. 2000). The *Rodriguez Vasquez* decision is thus enforceable and should apply to any qualifying Bond Denial Class. Nonetheless, DHS has refused to abide by it and continues to hold that those in Petitioner's position should be denied the opportunity for a release on bond.

14. Petitioner is entitled to consideration for release on bond under § 1226(a) in accordance to *Rodriguez Vazquez*, as he:

(1) does not currently have lawful immigration status and is detained in executive custody at the Eloy Detention Center;

(2) entered the United States without inspection on or about February 18, 2024, and was not apprehended by immigration authorities at the border upon arrival; and

(3) is not subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231.

**FACTS**

15. On February 18, 2024, the Department of Homeland Security issued a Notice to Appear, placing Petitioner in removal proceeding under 8 U.S.C. §

1182(a)(6)(A)(i) for having entered the United States without inspection. Petitioner's application for asylum remains pending before the immigration court.

16. Respondent and the Department of Homeland Security are bound by the Ninth Circuit's decision in *Rodriguez Vazquez*. Nonetheless, Respondent continues to defy that decision and unlawfully purport that Petitioner is subject to mandatory detention under § 1225(b). But this is a clear misreading of the law. Petitioner is unambiguously entitled to consideration for release on bond under § 1226(a).

17. EOIR leadership has reportedly sent guidance to immigration judges directing them to view district court orders such as those in *Rodriguez Vazquez* and *Maldonado Bautista* as not binding and further indicating that the authority which is controlling for immigration judges is that articulated by the Board of Immigration Appeals in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). ICE has issued similar guidance.[2]

18. Given that Respondent is detaining Petitioner in violation of law as construed by the Ninth Circuit in *Rodriguez Vazquez*, the Court should order that Respondent release Petitioner.

[2] "ICE Memo: Interim Guidance Regarding Detention Authority for Applicants for Admission," AILA (July 8, 2025), available at https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (last visited Mar. 18, 2026).

19. In the alternative, the Court should order that Respondent release Petitioner unless its provides Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within fourteen days.

20. The Court is respectfully requested to consider this Petition as the soonest time.

## JURISDICTION

21. This action arises under the Constitution of the United States and the INA, 8 U.S.C. § 1101 *et seq.*

22. This Court has subject matter jurisdiction and may grant relief under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, the All Writs Act, 28 U.S.C. § 1651, and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause).

23. This Court has jurisdiction to review bond hearings for errors of law, including as to whether the IJ properly concluded someone is a flight risk or danger to the community. *Martinez v. Clark*, 124 F.4th 775, 783 (9th Cir. 2024).

24. This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 *et seq.*, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the All Writs Act, 28 U.S.C. § 1651.

## VENUE

25. Venue is proper because Petitioner is in Respondent's custody at the Eloy Detention Center in Arizona. Pursuant to *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 493–500 (1973), venue lies in the judicial district in which Petitioner is currently in custody.

26. Venue is also properly in this Court pursuant to 28 U.S.C. § 1391(e) because Respondent is an employee, officer, and agency of the United States, and because a substantial part of the events or omissions giving rise to the claims occurred in the District of Arizona.

## REQUIREMENTS OF 28 U.S.C. §§ 2241, 2243

27. The Court must grant the petition for writ of habeas corpus or issue an order to show cause ("OSC") to Respondent "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an OSC is issued, the Court must require Respondent to file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id.*

28. Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963).

## PARTIES

29. Petitioner Guoming Xue is 48 years old and a citizen of the People's Republic of China. He resides in East Meadow, New York. He is currently detained in Respondent's custody at the Eloy Detention Center in Eloy, Arizona.

30. Respondent Eric Rokosky is employed by the private corporation CoreCivic, Inc., as Warden of the Eloy Detention Center, where Petitioner is detained. Respondent has immediate physical custody of Petitioner.

31. This action is commenced against Respondent in his official capacity.

## FACTUAL BACKGROUND

### ICE's Arrest Quotas

32. On January 20, 2025, President Donald Trump issued several executive actions relating to immigration, including "Protecting the American People Against Invasion," an executive order (EO) setting out a series of interior immigration enforcement actions. The Trump administration, through this and other actions, has outlined sweeping, executive branch-led changes to immigration enforcement policy, establishing a formal framework for mass deportation. The "Protecting the American People Against Invasion" EO instructs the DHS Secretary "to take all appropriate action to enable" ICE, CBP, and USCIS to prioritize civil immigration enforcement procedures including through the use of mass detention.

33. In late May 2025, then-Secretary of Homeland Security Kristi Noem and White House Deputy Chief of Staff Stephen Miller met with ICE leadership, setting a new arrest quota of 3,000 arrests per day and reportedly threatening job consequences if officials failed to meet arrest quotas.[3]

34. On May 28, 2025, Miller confirmed that "[u]nder President Trump's leadership, we are looking to set a goal of a minimum of 3,000 arrests for ICE every day, and President Trump is going to keep pushing to get that number up higher and each and every single day."[4]

35. Following the directive from Noem and Miller, ICE agents were instructed in an e-mail to "turn the creativity knob up to 11" and aggressively "push the envelope" in arrests, including by pursuing "collaterals"—individuals who by definition would not

[3] Elizabeth Findell, et al., *The White House Marching Orders That Sparked the L.A. Migrant Crackdown*, The Wall Street Journal (June 9, 2025), https://www.wsj.com/us-news/protests-los-angeles-immigrants-trump-f5089877; Julia Ainsley, et al., *A sweeping new ICE operation shows how Trump's focus on immigration is reshaping federal law enforcement*, NBC News (June 4, 2025), https://www.nbcnews.com/politics/justice-department/ice-operation-trump-focus-immigration-reshape-federal-law-enforcement-rcna193494; Brittany Gibson & Stef W. Kight, *Scoop: Stephen Miller, Noem tell ICE to supercharge immigration arrests*, Axios (May 28, 2025), available at https://www.axios.com/2025/05/28/immigration-ice-deportations-stephen-miller.

[4] Hannity, *Stephen Miller says the admin wants to create the strongest immigration system in US History*, Fox News (May 28, 2025), available at https://www.foxnews.com/video/6373591405112 (last visited Aug. 24, 2025).

have warrants.[5] As another e-mail put it: "If it involves handcuffs on wrists, it's probably worth pursuing."[6]

36. The overriding message, communicated by and to Respondent, is that agents and officers carrying out immigration operations on the ground must prioritize arrest numbers, regardless of the law. As one ICE official put it in 2025, all that matters is "numbers, pure numbers, [q]uantity over quality."[7]

37. Petitioner's arrest is the result this quota-driven enforcement. ICE agents stopped Petitioner's car even though no traffic violation had occurred, did not ask the driver any questions about his driving, asked only about the immigration status of the Petitioner and Mr. Sun (the driver) before detaining them, searching the vehicle, and transporting both men into immigration detention in Arizona.

---

[5] José Olivares, *US immigration officers ordered to arrest more people even without warrants*, The Guardian (June 4, 2025), https://www.theguardian.com/us-news/2025/jun/04/immigration-officials-increased-detentions-collateral-arrests.

[6] José Olivares, *US immigration officers ordered to arrest more people even without warrants*, The Guardian (June 4, 2025), https://www.theguardian.com/us-news/2025/jun/04/immigration-officials-increased-detentions-collateral-arrests.

[7] Jennie Taer, *Trump admin's 3,000 ICE arrests per day quota is taking focus off criminals and 'killing morale': insiders warn*, NY Post, June 17, 2025, https://nypost.com/2025/06/17/us-news/trump-admins-3000-ice-arrests-per-day-quota-is-taking-focus-off-criminals-and-killing-morale-insiders/, https://perma.cc/DB9R-MJUC (last visited Oct. 15, 2025) ("The Trump administration's mandate to arrest 3,000 illegal migrants per day is forcing ICE agents to deprioritize going after dangerous criminals and targets with deportation orders, insiders warn. Instead, federal immigration officers are spending more time rounding up people off the streets, sources said. 'All that matters is numbers, pure numbers. Quantity over quality,' one Immigrations and Customs Enforcement insider told The Post.").

**Petitioner's History, Arrest & Detention**

38. On February 18, 2024, Petitioner entered the United States near Tecate, California, as a pollical asylee. The next day, on February 18, 2024, DHS placed Petitioner in removal proceedings.

39. Petitioner has been residing in East Meadow, New York since March, 2024. Petitioner is self-sufficient, working various back-breaking remodelling jobs, and has filed and paid his taxes.

40. Petitioner has no criminal record whatsoever.

41. On the morning of September 4, 2026, Petitioner and his friend Mr. Sun visited Phoenix, Arizona from California. Petitioner and Mr. Sun explored potential opportunities working as delivery drivers in the Phoenix metropolitan area. Because Petitioner may relocate to California and work together with Mr. Wang. The two planned to return to California the same day.

42. That afternoon, the two men began returning to California in Petitioner's car. Mr. Sun was driving, while Petitioner was the passenger. After they entered California, ICE agents stopped their car on Interstate 10. . Mr. Sun was not speeding, and neither man committed any traffic violation.

43. The ICE agents did not present a warrant and did not explain their reason for the traffic stop. The agents did not ask for a driver's license, a vehicle registration, or

a proof of insurance. Instead, they immediately asked the immigration status of Mr. Sun and Petitioner.

44. Petitioner told the agents that his immigration court case was pending and that he held a valid Employment Authorization Document and a Social Security number. The agents responded that those documents did not establish lawful status.

45. Finding both Petitioner and his friend without lawful status, the agents then detained Petitioner and his friend and placed them in the back seat of a law enforcement vehicle. The agents searched Petitioner's car without a warrant and without Petitioner's consent, and they seized both men's cell telephones. Petitioner complied with all the agents' instructions and commands.

46. The agents then took Petitioner and Mr. Sun to a nearby law enforcement office, where they were interrogated further about when they came to the United States, how they had entered, and why they had traveled to Arizona. Petitioner was detained at that office until approximately 10:00 or 11:00 p.m.

47. Petitioner and Mr. Sun were then transported to Eloy Detention Center in Eloy, Arizona, where they have been detained ever since.

48. Following Petitioner's arrest and transfer to immigration custody, ICE issued a custody determination to denying Petitioner's opportunity to be released on bond. Pursuant to *Matter of Yajure Hurtado*, immigration judges are unable to consider Petitioner's bond request due to lack of jurisdiction.

49. As a result, Petitioner remains in detention. Without relief from this Court, he faces the prospect of months, or even years, in immigration custody, separated from his community and unable to work or to support himself while he pursues his pending asylum application before the immigration court.

**The Inadequate Bonding Hearing**

50. In a prior Habeas Petition (2:26-cv-07159-CKJ), this Court on October 13, 2026 ordered that Respondent provide Petitioner a bond hearing within seven days or release him.

51. While Respondent did provide a bond hearing on October 16, 2026, it was factually inadequate, if not a sham.

52. Respondent notified a wrong attorney (Mr. Jianchen Zhu) about the bond hearing on October 14, 2026 and did not allow Petitioner meaningful time to submit any supporting evidence.

53. The immigration judge then summarily denied Petitioner bond, deeming him a flight risk.

54. Such an inadequate bond hearing does not comport with due process.

## CLAIMS FOR RELIEF

## COUNT ONE

### Violation of the Fifth Amendment to the U.S. Constitution
### (Right to Procedural Due Process)

55. Petitioner repeats, re-alleges, and incorporates by reference each allegation in the preceding paragraphs as if fully set forth herein.

56. The Due Process Clause of the Fifth Amendment to the U.S. Constitution prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. Amend. V. Due process protects "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

57. Due process requires that government action be rational and non-arbitrary. *See U.S. v. Trimble*, 487 F.3d 752, 757 (9th Cir. 2007).

58. By notifying a wrong attorney (Mr. Jianchen Zhu) about the bond hearing on October 14, 2026 and not allowing Petitioner meaningful time to submit any supporting evidence, Respondent denies Petitioner his right to a proceeding in which he has a meaningful opportunity to be heard as to his eligibility for bond and further deprives Petitioner of a reasoned, non-arbitrary decision from the immigration judge as to his custody. In doing so, Respondent violates Petitioner's right to procedural due process.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests this Court grant the following:

1. assume jurisdiction over this matter;
2. issue an Order to Show Cause ordering Respondent to show cause why this Petition should not be granted within three days;
3. declare that Petitioner's detention violates the Due Process Clause of the Fifth Amendment, the INA, and the implementing regulations;
4. issue a Writ of Habeas Corpus ordering Respondent to immediately release Petitioner from custody;
5. in the alternative, issue a writ of habeas corpus requiring Respondent to release Petitioner unless Petitioner is provided a bond hearing under 8 U.S.C. § 1226(a) within seven days;
6. issue an Order prohibiting Respondent from transferring Petitioner outside the District of Arizona while this Petition is pending, without first providing the Court and Petitioner's counsel with advance notice;
7. award Petitioner attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, and on any other basis justified under law; and

8. grant any further relief this Court deems just and proper.

Dated: October 20, 2026

Respectfully submitted,

Zheng “Andy” Liu (CBN 279327*)
***Aptum Law***
1660 S Amphlett Blvd Suite 315
San Mateo, CA 94402
Tel.: (650) 475-6289
Email: Andy.Liu@AptumLaw.us
*Attorney for Petitioner Guoming Xue*
*Application for *pro hac vice* forthcoming

## VERIFICATION PURSUANT TO 28 U.S.C. § 2242

I represent Petitioner Guoming Xue and submit this verification on his behalf. I hereby verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated: October 20, 2026

Respectfully submitted,



______________________________

Zheng “Andy” Liu, Esq.